The Appellate Court of Illinois is reconvened. You may be seated. Good afternoon, counsel. Our next case for today is case number... We actually have consolidated cases 415-0519 and 415-0520. For the appellant, we have Mr. Flora... Flora. Flora. Alright, Mr. Flora. And Spisa or Spesia? Spesia. Okay, Spesia. Thank you. Are you ready to proceed, counsel? I am. Thank you. May it please the court. Counsel, we've briefed this robustly. I'm going to try to be brief. The landowner should have been permitted to testify in these imminent domain proceedings. It is up to the jury to determine the landowner's credibility. The court, in response to a motion in limine, barred the landowners from testifying as to the value of the permanent easement, the temporary easement, and the remainder in the total just compensation. And in response to some comments at the motion in limine hearing by opposing counsel, Mr. Spanos, which was one of the counsel, argued the law is very clear with respect to damages to the remainder. It must be expert testimony, not a layperson's testimony. He went on to say, number one, with respect to those damages, the case law is very clear. It doesn't matter if it's been disclosed. He said, judge, there has to be expert testimony. The testimony has to come from a qualified expert. And he said the case actually says that. This is the Jones case. Now, he didn't give the citation, but quite frankly, the Jones case doesn't say anything remotely like that. Generally, the Department of Transportation v. Harper cites that a landowner is qualified to express his opinions on value based merely on his ownership of the property. Well, counsel, let me ask you this. I mean, isn't it correct that the trial court agrees that a landowner can testify as to the value of his land, but we have a couple of things going on here. One, where didn't we have some answers to interrogatories where they said they had no information or opinion as to the value, and then two, at the time that they wanted to give the testimony, wasn't the court concerned that there was no basis for the testimony given what had previously transpired? I mean, the court didn't just deny and say landowners can't testify about the value of their land. No, that is exactly what the court said. Initially, they were deposed, and the landowners didn't. It was early on in the case, and we supplemented, as we're required to do under the rules, and they got a full supplementation. And that's the sound bite where they're saying, well, yeah, it doesn't matter about the disclosure. You got the disclosure. There's no dispute about that, or we got it is what they said, but they argued it doesn't matter. Landowners can't testify as to the damages to the remainder, and what the court said specifically is the court was asked this question by Mr. Spezia. It said, so they are barred from testifying about value of the permanent easement, the temporary easement, the remainder damage, and total just compensation. That is correct. Is that the same thing as testifying about the value of your land? What the court said is if they have an opinion about the overall price of the land, they can come in here and offer that, but that is not the same as testifying as to the value of the permanent easement, the temporary easement, and the remainder damage, and total just compensation. So what is the basis in case law that would allow the landowners to testify regarding the value of the easement and the temporary easement and the remainder and all of that? Well, the case law says generally the owner of land is qualified to express opinion of its value by virtue of his ownership. In fact, there was an American National Bank and Trust versus North Chicago appellate court reversed, overruled the trial court's ruling, when the lower court said that the landowner couldn't testify to value and damage to the remainder because he wasn't a real estate valuation expert. There is no law anywhere in the state of Illinois that I know of that says a landowner cannot come in and testify, and basically what the court says in the Department of Public Works versus Exchange National Bank, the second district case, is they can expose any flaws with that opinion through cross-examination at trial. So if they disagree, one of the court's problems, the court said, well, what if they come in and want to say that the land is worth a million dollars or a billion? I think it might even say a million or a billion. Well, that is why we have juries. That is why we have the jury decide on the credibility of those witnesses. So that's the law in Illinois. Now I'm going to move on, Your Honor, to the barring of our expert, Mr. McCann. Now he was barred based on an incorrect assumption by the court that he had claimed or as opposing counsel claimed that he said that activity in the temporary easement caused damages to the remainder, and he never said that. In fact, I have a transcript here, and what he says is he was asked this question. It's your opinion that activity in the temporary construction easement areas causes damage to the remainder property. It's true. And he said, answer, well, it causes damage within the temporary easement. And then he's asked, it also causes or is a contributor to the cause of the remainder, correct? And he says, answer, since it's temporary, no. I believe the damages are really caused by the permanent easement because that's an ongoing factor that any buyer, knowledgeable buyer, would have to be concerned about. The temporary easement, though, no. That's a relatively short-term imposition of a burden on the property. Now, where the court said it barred him because he said, well, I wrote it down. I heard him say, well, what the transcript says is no. He didn't equate activity or damages within the temporary easement as causing damages to the remainder. And why did he stay away from this? Because Mr. McCann has testified in over a hundred trials, and he knows that that is not the law. And he knows that is not the law. Now, it went on, and that's based on Trunkline, a decision in Trunkline where Trunkline says that temporary activity that occurs in the temporary easement is only temporary in nature, and that isn't going to have a long-term effect. Now, we need not even debate that issue as to could there ever be a situation where activity in the temporary easement, like bulldozing trees down, would cause a damage to the remainder. But that's not before us. The real issue was we've got our landowner's part, and now he bars Mr. McCann based on this misinterpretation of his statement on the temporary easement. And there were some other questions, and I'm prepared to answer them, but about when they got in here, whether or not he had provided materials in a 213 request. One thing you will not find, 213F, one thing you will not find anywhere in the record is that 213F requirement, to my knowledge. Okay? It doesn't exist. Now, they talked about interrogatories, general interrogatories that were submitted, and they said, well, we asked for any comparable sales. Actually, what they asked for was any and all comparable sales, and they got through a cause that we were going to be complaining that they're going to complain that we didn't give them everything. We gave them 7,000 pages of material. They did not depose our expert. They're going to lay in the weeds. We're going to wait. We'll catch him at trial. All right? And really, their complaint on McCann was, A, this confusion about the temporary easement and whether it causes damages to the remainder and what his opinion was, which he was very clear on, and then, B, they're saying, well, they didn't disclose something. Well, number one, if there's a discovery dispute, you don't start that in the middle of the trial. And there's a case, we start the Bedar case about that, that if there's a discovery dispute and they're going to allege that we didn't give them something, then you've got to file a motion. But before you file a motion, you have to do the personal contact and try to resolve your differences. What they did is they laid in the weeds until the trial had started and then said, we were going to say that he didn't give us something. And even the judge kind of picked up on that. Okay? Now, one of the issues in this case, and that's enough on McCann, the extremely important issue in this case is mortgaging the easement. At trial, plaintiff's exhibit number one set forth the easement that was being sought by the plaintiff. It included the right to mortgage the easement. Defendant claims that the right to mortgage the easement will adversely affect the value of the remainder property. In response to a motion in limine, the court barred defendant from referencing anything about Enbridge's ability to mortgage the easement. And we argue that's an abuse of discretion. Plaintiff was the master of its own condemnation proceeding. He didn't have to seek the right to mortgage the easement. In fact, if the Illinois Department of Transportation, IDOT, condemns property by taking an easement, they don't seek the right to mortgage the easement. But that is exactly what plaintiff did. And it's in exhibit one. The problem, though, is we were barred from cross-examining anybody about that. We were barred from introducing any evidence. And we submitted an offer of proof in that fact. But the point is we argued plaintiff should have been allowed to introduce evidence that mortgaging the easement would damage the remainder of the property. And we argue it was an abuse of discretion not to allow a defendant to do so. Plaintiff is the one that chose to mortgage, to seek the right. And the court made a comment, well, isn't this speculative as to whether or not they will ever mortgage the easement? We're not debating whether or not they would ever do that. We're debating on what is the value. Would the ability to mortgage that easement, which has a value, affect the property? Probably, I'm going to just touch real briefly on their expert. It was their burden to prove their case. And their burden said that they have to come in and show the value of the easement. Now, Mr. Borson was their expert. And he says, as I testified yesterday, the value of the permanent easement is the part of the whole after the taking. And it's not based on market sales evidence because there is none. Even their own expert came in and said there is no market data. He goes on to say on May 14th in the morning during his examination across, there is no market evidence because there's no market sales of permanent easements. Now, across examination, I asked Mr. Borson, what about this? Would you agree with me, for example, if there was an easement that allowed a horse and buggy to go across the property, that might have a different value than an easement for the same pathway, but it allowed semi-trucks to go up and down it every day? And he said, certainly. And I asked him, it would affect the property differently depending on what is allowed in the easement? And he said, yes. Now, he said, I would agree with you that it does affect the value on those property rights that are given up in the easement. I asked him, is that why it's important where you look at the easement language to make up a determination in your mind as to what actually is being given up? And he said, yes. Now, why is that important? Nobody but this pipeline company that I've ever seen ever asked in any condemnation proceeding to be able to mortgage the easement. And our argument is, and our experts were going to testify to that, that that would adversely affect the value of the remainder. And we were barred through a motion in limiting, and we submitted offers of proof on that from submitting that data. Wrapping up on the, I apologize, I lost my notes. Mr. Borson said there isn't any data because there aren't any sales. Well, we sought to admit evidence of easement sales into the record, and the court barred that. Now, they said, well, special value, special value. Number one is they have to prove if we have any willing buyer and any willing seller, we have a company. In fact, we have a company where they bought an easement from the city, for example. Enbridge bought easements. We wanted to introduce those to say, here is what they paid. That was barred.  Well, wait a minute. They have the burden of showing that special value was actually paid for  Now, granted, they didn't want that information coming in because even their experts said, we don't have any. There's really no quantifiable way to do this because what you're doing is you're valuing an easement. And pipeline easements, Mr. Borson said in the transcript, aren't bought and sold in the open market. Specific pipeline easements aren't bought and sold. You don't see him advertise it. It just sits out there. So what he did is he went out and he just interviewed landowners. And that's how they came to the determination, well, it's going to have a 25% value of whatever the land is. That's how he came up with it. And he said, but in my opinion, it's just a portion of the property rights. It's just my opinion based on the data that we've collected. And that data was interviewing landowners. Counsel, can I interrupt you and ask you in the time that you have left, or some of it anyway, could you speak a little bit about what things could be contested at this hearing? We know from the record and what happened that this was supposed to be about the value of the easement. And then your client wanted to contest whether or not there was a necessity determination, whether or not there was a public benefit. Yes. And whether or not the certificate was still in good standing. That's the Traverse issue. Right. Traverse is generally an evidentiary hearing. The lower court treated it as a motion to dismiss at 2-6-19. Didn't allow the landowners to testify. The law in Illinois is that a Traverse hearing is more like a trial than anything else. We argued we needed discovery. We needed discovery to challenge. Because they changed this project. They changed the project by making it a different project. They reduced it, though, right? It started with, what, 36 and then 24? No, they changed. They reduced the size, but they changed where the product was coming from. Originally it was coming from Canada. Then it was going to come from North Dakota. And it was going to pump an entirely different product. But really it comes down to we needed discovery to challenge that. What I'm interested in is, given your client's participation in the commission hearing, what right did they have to, again, contest certain matters at this trial? Sure. The law is pretty clear on that. That's the Illinois Power case. It said landowner's rights are at issue only for the first time in the eminent domain proceedings. Whether or not they participated in the lower court proceedings, in the ICC proceedings, is immaterial. Was that correct? I believe that is correct, yes. Is that a correct decision? You know, Your Honor, that's a good question. I think so because they're really not, the law is that the ICC only reviews what's before them. It does not review whether or not the project has changed, whether or not they're really going to go through with what they're stating. Well, another question is, since you represented them before the ICC, what were the issues in front of the ICC that were different from the issues you wanted to present at the trial? Well, I'll give you an example. At the second ICC, you probably may recall, they stopped the project and then they restarted it two or three years later, and this court ruled on that. But we wanted to challenge that this is a whole new project. They never, they're. . . Did you challenge that in front of the ICC? We did, and the ICC judge said. . . My question was, what was the issue in front of the ICC that you wanted to raise at the trial level that wasn't already raised at the ICC? What we wanted to raise at the ICC was change in project, public need, public benefit, and that we didn't get to challenge because when they came back for their second bite at the apple, the only thing was whether they had used good faith in the negotiations of the land owner. And we wanted, we tried to challenge that at the ICC. We weren't allowed to. But when we wanted, we wanted discovery on all of that, but we weren't allowed to do that at the traverse hearing. So are you basically saying in front of the ICC we're looking at basically the reasonableness of their plan and the location? That's correct. Whereas when we get to the eminent domain, it's a different picture and actually the land owner is for the first time for sure facing possible loss of property rights. And that and good faith negotiations, all of those things. We should have been allowed to say how did you come up with this proposal to pay this land owner? Wasn't good faith negotiations addressed to and resolved by the commission? I'm sorry, Your Honor. Wasn't good faith negotiations addressed to and resolved by the commission? No, Your Honor. It was not. Not individually. Not individually. They never looked at whether they sent Mr. Jones a good faith offer or Mr. Schmidt. Thank you. Thank you, counsel. You'll have an opportunity to address us on rebuttal. Mr. Porra, I'm going to give this name one more shot. Listen. Spacia? No. I see you just took my opportunity. I wrote Spacia down. Is that right? That's right. Okay. No, I was referring to him. It's Mr. Porra. Fine Italian name. May it please the court, counsel, my name is John Spacia. I represent Illinois Extension Pipeline Company, and I have represented Illinois Extension Pipeline Company since about two years ago when these complaints were filed shortly after the commission issued its certificate. And for two years, I have endured the kind of tortured analysis that we just heard here in oral argument, the twisting of the law, twisting of the facts. I think that this court is certainly in a unique position, this Fourth District Appellate Court, having already issued four appellate court decisions about this Southern Access Extension Pipeline Company and four interim rulings on motions to strike, various arguments, and it looks like four more decisions to go about this project. These Livingston County cases that we're hearing about today are, in fact, part of a bigger picture. They're part of the Southern Access Extension Pipeline. And in this case, in these consolidated cases and over the coming months,  and it's a pattern that we've endured for several years now, a pattern by defense counsel, a pattern by his expert, and it's a pattern that involves a fundamental disregard for proper procedure in the appellate court, in some ways a completely inadequate record, maybe by design, and I'll get into that. It's a pattern that involves reckless disclosures of damages, designed not to put landowners in a position that they were before the takings, as this court suggested in the Cokie Mill decision, but to create windfalls. Hundreds of thousands of dollars of damages in these particular cases for what was 3.6 acres of an easement area. That's the permanent easement area. A complete disregard for controlling precedent, failure to even acknowledge this court's decision in West Cokie Mill, a failure to acknowledge that the Illinois Supreme Court in the Forest Preserve District of DuPage County case had already rejected the notion that we needed an appraisal to negotiate in good faith. Decisions not even cited by the defendants in these cases, even after they were brought to their attention in the trial court. There's a pattern here of a willingness to contradict sworn testimony, essentially say anything, to achieve their purpose of windfall damages. Efforts to mislead the trial court. A pattern of scurrilous counterattacks that you'll see in the reply brief that was filed in this case. So when it's suggested that there is controlling law that hasn't been cited, there are scurrilous counterattacks. Calling me, calling my client liars, that type of thing. I counted 12 different times in the reply brief where I was accused of lying or misrepresenting facts. These tactics were rejected by three trial courts alone within the 4th District. And they properly rejected these tactics. The circuit court in Livingston County correctly decided these cases as a matter of law. It certainly did not abuse its discretion. And in fact, it's pretty clear that there's no good faith basis for this appeal. I'd like to touch briefly on three issues. And the first is the issue that the court landed on with counsel, and that is the traverse. And this starts the accusations here. Quote from their reply brief, Enbridge misrepresents the law. That's me, when it falsely claims that Cokie Mill allowed for the resolution of a traverse in motion to dismiss under Rule 2-619. I've submitted to the court that statement is not false. It's not a misrepresentation. This court should reject those scurrilous allegations that they put in the reply brief because that's exactly what the court said at page 908 of the Cokie Mill decision. Counsel, let me ask you more directly. What is the impact of opposing counsel's client's participation at the commission decision level? The impact of their participation is that they cannot simply relitigate issues already decided, in this case, not only at the commission, but by this Fourth District appellate court. So what we have here, and the question and answer in the trial court framed the issue, questioned by the trial court to counsel. But if the ICC comes back and says, or the appellate court comes back and says, the ICC was correct in all of what they've done, their findings and their certificate, does the defendant have an opportunity to then re-raise it again with another de novo review? Their position is yes. Our position is absolutely not. They asked the circuit court of Livingston County to sit in review of decisions of issues already decided by this appellate court. So our position is this. When the Traverse was filed in this case, and I urge the court to look at the Traverse that was filed, it is seven conclusory paragraphs. This is filed July 25, 2014. At that point in time, they'd done years, years of evidence had been exchanged at the commission. Cross-examinations had occurred at the commission. And they filed seven conclusory statements. They challenged that the pipeline project was, quote, not necessary or convenient. They challenged that with no citation to anything. There's not a public purpose. This does not constitute public convenience and necessity. Not a common carrier. All of those issues had been decided finally by this court in its decision in what we call Intervenors 1, October 25, 2010. My position is there's not even a good faith basis to make those arguments. But the law does not allow for the relitigation. The law does not allow for not only the circuit court of Livingston County, but then we went to McLean County and DeWitt County and asked all of those circuit courts and suggested that they sit in review of decisions already made by the Fourth District Appellate Court. I would submit this to the court. At the time they filed this appeal, it was even worse. This court had decided Intervenors 1. It had decided all of the public use issues, all of the necessity issues. It had decided Intervenors 2 and said that there was overwhelming support for the decision, the commission's decision to grant eminent domain authority. And this very court had affirmed and acknowledged the authority to condemn in the Troyer decision as a condition preceding to allowing immediate access. So it's our position that the law does not allow for the relitigation. It's our position that there's no good faith basis to plead this notion that they can simply relitigate, even if there was. There's not a single fact pled after years of evidence being exchanged. There's no law that was ever provided to the court in this traverse and motion to dismiss. And on top of all that, this court has already stricken similar arguments, similar efforts to relitigate in the Attorney Turner's cases in 4-15-0346. This court has already, after the decision in Intervenors 3, decided to strike what are really cut-and-paste arguments, for the most part, from the McLean County Attorney Pleuris cases in McLean County, 4-15-0807. There's no right... Counsel, let me ask you this. Sure. So what are they allowed to do at the eminent domain proceeding? Can I ask a question before you answer that one? Because my question is, Intervenors 1 and 2 involved administrative proceedings before the commission. Is that correct? I mean, we were reviewing administrative decisions in Intervenors 1 and 2, no? That's right. Okay. So then, now we're in an eminent domain proceedings. And then Justice White just asked you that question. What can they raise at the eminent domain? Okay. So one thing they can clearly raise is whether we negotiated in good faith with these landowners. That can be raised. My position is that the rebuttable presumption is indeed rebuttable. If they had evidence, if they could establish that, for example, the commission acted beyond its authority, that there was a void ruling from the commission, had no statutory authority, I would suggest that that could be challenged. That's just if the commission ruled. I think it becomes more problematic, and in these particular cases, when the same issues... I agree with Justice Polk. So this was a review of an administrative ruling. However, the issues that were being decided were the same issues in front of... that were attempted to be brought before the circuit court. Public need, public use, convenience and necessity, all issues that had already been decided. I guess I'm just wondering, at the eminent domain proceeding, we have a situation where the landowner is truly facing losing, you know, a portion of their land for this easement. And it just doesn't seem fair that they would not be able to litigate these things. I mean, I think really that's what LENDS says, that they can litigate these things, because now their rights are at issue. Their property rights are truly at issue, whereas they're not at the commission level. The LEND case, of course, decided before the eminent domain act was amended, and created the rebuttal presumption. I don't think that even LEND would stand for the proposition that you can re-litigate voidable issues that the commission has already decided. I think that in these particular cases, though... Well, let me ask you, because the holding in LEND is that the Illinois Commerce Commission's findings that the needs and plans of utility constituted of public use, and that certain properties needed to be acquired to develop those plans, did not preempt the court from inquiring into the same subject matter, even though the property owners had fully participated before the commission. That's the holding in LEND. Right. But the holding in LEND also has to be read with the law that says that voidable decisions by the commission are not challengeable. So, the size of the pipe, the product being conveyed through the pipe, voidable issues. Not proper in the circuit court in an eminent domain proceeding. I want to point this out. That's not the circumstance we find ourselves in here. What we find ourselves here is a circumstance where the circuit court's decisions in Livingston, in McLean, in DeWitt County, would have been in review of this court's final decision in Interveners 1. On the issues of what? Public use, public need, public convenience and necessity. And I would submit to the court that that's not the system. That's not an allowable circumstance. So, what we would have determined in, let's say, Interveners 1 and 2, was whether or not the commission's decision was clearly erroneous on those issues. And we found they were not, that the evidence supported those. And, therefore, your argument is the defendants cannot re-litigate that issue in front of the trial court. That's right. Cannot re-litigate that issue in front of the trial court in face of what is a presumption that attaches to the commission. So, tell me a little bit about this presumption in the eminent domain law. You say this was added after the Lynn decision. Right, 2007. And what is the presumption of? What is the presumption state? Sure. It's a rebuttable presumption on the specific issues enumerated in the statute. So, there is a rebuttable presumption. Give us that cite, counsel. Sure. 735 ILCS 30-5-5C creates a rebuttable presumption that such acquisition of that property is primarily for the benefit, use, or enjoyment of the public and necessary for a public purpose. That's the specific presumption in the statute. So, the commission's finding creates that rebuttable presumption. That's right. The commission's finding creates that. So, the procedure is Illinois Extension Pipeline Company follows the Public Utilities Act. And when it obtains the certificate from the commission, that creates a presumption on those issues. But how do you rebut the presumption if you're not allowed to introduce evidence before the trial court? Well, our position is that you rebut the evidence. The standard on the rebuttable presumption is did the Illinois Commerce Commission abuse its power? Did it abuse its discretion? Our position is your opportunity to rebut that would be confined to what was presented to the commission. The commission couldn't have abused its discretion, for example, on evidence that was never presented to the commission. So, that's the rebuttable presumption. I'd like to, if there are other questions, I'd like to move on. The landowners in this case, the court properly pointed out a couple of the bases why landowners were not allowed to testify in these cases. We took depositions of landowners, four different landowners, asked them about their opinions of value. The first one said they would be speculating. The next one said they had no idea of value. The next one said they had, quote, no estimate of value. The other one said they didn't know value. And a week later, they were disclosed to have $575,000 worth of damages opinions. Less than a month after that, they were disclosed to be relying on the hydrostatic testing program that was in a contractor's safety manual. I would submit to the court there was no abuse of discretion in barring those landowners because they were never shown to be qualified to testify about the two pertinent issues. The first one, what is the contributory value of the easement to the whole? And what is the remainder value in the before and the after? I'd also like to touch just briefly on appraiser McCann and a couple of things. This business of comparable easements, counsel told us here today that the defendants sought to admit easement sales. That's what I wrote down. They sought to admit easement sales. And I would submit to the court that they simply cannot get their story straight about these easement sales. McCann's disclosed in November saying the basis of my opinion is comparable easement sales. In May, counsel tells the trial court he relied on easement sales as a basis for his opinion. But when I asked McCann under oath on May 15th, he said, quote, not at all. He hadn't based, not at all based on easement sales. They then submitted an offer of proof saying that McCann's going to show that the easement sales illustrate fair market value and that they are comparable. I suggested to the court this kind of duplicitous playing with the facts is simply has no place in these proceedings. How can you submit an offer of proof after the man says under oath I never relied on the easement sales? Two weeks later, submit an offer of proof signed by counsel saying they prove fair market value. The same thing is true with these comparable sales. And actually, one of the most troubling things about these cases is the comparable sales. McCann has opinions that were disclosed by counsel on November 28th of 2014. $450,000 in damages in November of 2014. And as the court says, they dumped a 7,000-page file on us. On February 24th of 2015, I sent a 201K letter and said provide us with your comparable sales. Why did I do that? Because I had already asked them in discovery and they didn't give us anything. Counsel says to the trial court, quote, there was absolutely no request that I can see for comparable sales. And the court should look at this because the trial court comes right back and says it's right here in paragraph 11. They asked for comparables. And the fact is they never gave them to us. And it's not my obligation. This court under Kroll said it's not my obligation to tell the defendant how he needs to prove his case. On May 14th, the night before he was to testify at trial, the expert says I first told counsel about my comparable sales. And on May 15th, the next day, they can't identify one. They cannot identify a single comparable sale. And then what happens? The 7,000-page file that they dumped on us is not even part of the appellate record. Maybe that's by design. But what's undisputed here is they never identified a single comparable sale. And I'm going to leave the court with this. For all the reasons that we state in our brief, we're asking that you affirm the trial court. But maybe they can answer that question for us. How could McCann have opinions in November of 2014 that the lawyer types in and signs? How can he have those opinions? $450,000 of damages for 3.6 acres of a permanent easement that goes across farmland. $450,000. And it's not until six months later that he identifies his comparable sales. He claims to have identified them. And even when he's asked by the trial judge, even after we object and the burden under Rule 213 shifts to the proponent or the witness, they can't identify a single comparable sale. And in their appellate briefs and in this appellate record, there is not a single comparable sale. Maybe they can answer that question for us. Thank you. Thank you, Mr. Spezia. Mr. Plora, any rebuttal? Sure. Briefly, Your Honor. A couple things. You caught the issue on the rebuttable presumption. That is in the eminent domain statute. Not any statute that allows them to seek eminent domain authority in the ICC proceedings. So the issue about rebuttable presumption is the landowners in the Eminent Domain Act have the ability. There may be a presumption that they acted correctly at the ICC. But the landowner has the right to rebut that. And they need discovery. Justice Steigman asked a great question. And I've been thinking about it since he asked that. He threw me off. Is that still the way it should be? It's an interesting question. I don't know the answer to that. But that is currently the law. They have the ability to rebut it. Now, we could argue about what would they rebut. Well, they would rebut, number one, whether there's been a good faith offer made. They would rebut whether or not there's been any. Of course, you don't have to give. The court has already said the law that you don't have to give an appraisal. But you've got to give something to show the basis of the offer. And that's the key to getting into the court in Livingston County is you have to do all of these things. Counsel, you heard the reference to the comparable sales issue regarding McCann. Sure. What's your response? Well, my response is, number one, if you look, and, of course, I know you wrote the Cottrell decision. And number one is show me in the record where a 213F interrogatory was requested. What they requested and what they got is we want any and all sales that you think are comparable. Okay? That's what it says in the record. Now, that's different than a 213F. And I'm very familiar with all of this. Well, it's not their job to educate me. But it's also not my job to tell them you've got to answer. Was there a response to what comparable sale McCann considers? Yes. 7,000 pages including the, of course, this isn't part of it, the stencil properties were listed in the disclosures as comparable. We submitted in the 7,000 pages a variety of comparable sales, some down in the Paris, Illinois area. And they're in there. What they didn't do, though, is you'll note their own expert says in the record. We reviewed them. But I didn't understand them. Well, then, you, my friends, all you need to do is notice him up for deposition and ask him. Because if we hadn't have given them the 7,000 pages, then they're going to be saying you didn't give it to us. Mr. Spacey made reference to the absence of those 7,000 pages in the record on appeal. Is he correct? He did. He did. Is he correct that it's not part of the record? I don't know the answer to that, Your Honor. Well, you're the appellant. Did you make it part of the record? I don't know the answer to that. You don't know if you made it? I do not. I think this came. Did you overlook this or I don't understand. Probably, Your Honor. Probably. But what isn't in the record is first, before we get into that comparable sales, we've got to start back at 213F. If they want to say that you didn't ask, you didn't respond to a 213F, the first step is I have to show that I asked. And that you're not going to find in the record. That's not in the record. And the bottom line is if they're arguing, waiting until the day of trial to argue about a discovery dispute,  You can't lay in the weeds. But they're a very highly skilled, multi-law firm group of attorneys. Thank you, Your Honor. Thank you. This matter will be taken under advisement. We'll be in recess at this time.